JOHN MURPHY AND JOHN NESBIT, APPELLANTS, *v.* THE BOWERY NATIONAL BANK, RESPONDENT, IMPLEADED WITH JOHN MULHOLLAND AND OTHERS.

*Contract with a municipal corporation — lien of persons furnishing materials, upon moneys growing due to the contractor — the assignee of the contractor takes subject to their rights.*

One Mulholland entered into a contract with the city of New York for the construction of a sewer. The contract provided among other things as follows : "The party of the second part agrees that he will furnish the said commissioner of public works with satisfactory evidence that all persons who have done work or furnished materials under this agreement, and who may have given written notice to said commissioners before or within ten days after the completion of the work aforesaid, that any balance for said work or materials is still due or unpaid, have been fully paid or secured therefor, and in case such evidence be not furnished as aforesaid, such amount as may be necessary to meet the claims of the persons aforesaid, shall be retained from the moneys due the said party of the second part under this agreement, until the liabilities aforesaid shall be fully discharged or such notice withdrawn."

*Held,* that one to whom the contractor assigned all moneys due and to grow due under the contract, took them subject to all equities existing between the contractor and the parties doing work or furnishing materials under it, or having claims which might under its terms be enforced against the moneys in the hands of the city belonging to the contractor.

That the persons so doing work or furnishing materials was entitled to be paid from such moneys in preference to the contractor's assignee.

APPEAL from a judgment in favor of the defendant, the Bowery National Bank entered upon the trial of this action by the court without a jury.

*Nelson Smith,* for the appellants.

*James R. Marvin,* for the respondent.

BRADY, J. :

It appears that upon the 10th of October, 1876, an agreement was made between John Mulholland and the Mayor, etc., for the construction of a sewer in Forty-second street from the Third avenue to the East river. The contract, amongst other things, provided as follows :

" The party of the second part " (being the defendant Mulholland) " agrees that be will furnish the said commissioner of public works with satisfactory evidence that all persons who have done work or furnished materials under this agreement, and who may have given written notice to said commissioners before or within ten days after the completion of the work aforesaid, that any balance for said work or materials is still due or unpaid, have been fully paid or secured therefor, and in case such evidence be not furnished as aforesaid, such amount as may be necessary to meet the claims of the persons aforesaid shall be retained from the moneys due the said party of the second part under this agreement until the liabilities aforesaid shall be fully discharged or such notice withdrawn."

In the month of March, 1877, an agreement was made between the plaintiffs and Mulholland, by which the former were to furnish all the brick, lime and cement necessary to complete the sewer. And when the application by Mulholland was made to the plaintiffs for these materials, the former said that his contract provided for the retention by the city of thirty per cent of the amount until the completion of the job, for the benefit of the materialmen, which thirty per cent would be for the plaintiffs if he did not pay them the money before that time. On the faith of that understanding, the plaintiffs furnished the materials mentioned, which were used in the construction of the sewer. It was on the faith of what Mr. Mulholland told them, and what he told them has just been stated. It

is true that nothing was said as to who was to draw the money from the city. The plaintiffs claim that there sprung out of this contract an equitable assignment of the fund which would result from the retention of the thirty per cent mentioned.

It appears further that the materials were furnished between the 12th of March, 1877, and the 24th of September, 1878. It also appears that on the 23d of January, 1877, the defendant Mulholland executed and delivered to the Bull's Head Bank of this city, a written assignment of all moneys due or to grow due under the contract mentioned, on the faith of which the bank advanced to Mulholland various sums of money, which were used in the construction of the sewer. On the 14th of December, 1877, the Bull's Head Bank required the payment of the moneys so advanced, whereupon Mulholland delivered to one Charles Devlin a written assignment of all the moneys due or to grow due from the city, and it was thereupon agreed between him and Devlin that the assignment should cover and secure Devlin for the moneys that Mulholland then owed him and such as he should pay to the Bull's Head Bank in payment of their claims, and such moneys as Devlin might thereafter advance to him, and all the moneys that the Bowery National Bank had advanced or should thereafter advance to Mulholland. This assignment was delivered by Devlin to the Bull's Head Bank, and he paid to it $3,615.85, at which time the bank executed and delivered to him a written assignment of all moneys due or to grow due under the city contract. Devlin, after these two advances, made further advances to Mulholland from time to time in considerable amount, and received from him from time to time moneys on account of Mulholland's indebtedness to him.

It appears, further, that there was a settlement between Devlin and Mulholland, and the sum of $4,186.62, as the balance due for moneys advanced to Mulholland under the arrangement between them, agreed upon. These moneys were employed in the construction of the sewer. Previous to May, 1878, the Bowery National Bank had discounted for Mulholland two notes, one for $2,500, indorsed by Devlin, and the other for $2,000, indorsed by John McDermott at Devlin's request, and which were held by this bank on the 19th of June, 1878, and were unpaid, and for which Mulholland was then indebted to the bank. The moneys advanced on

these notes were used in the construction of the sewer. At the same time the bank held two other notes made by Mulholland and indorsed by Devlin, which, previous to May, 1878, had been discounted for Devlin, and these notes were given by Mulholland to Devlin as accommodation notes. They were for $6,000 and $3,200, respectively, and on the 19th of June, 1878, were owned and held by the bank and were unpaid.

On the 19th of June, 1878, Charles Devlin, it appears, executed and delivered to the Bowery National Bank a written assignment of all moneys due or to grow due under the sewer contract, and that at the time this assignment was delivered it was agreed between the bank, Devlin and Mulholland, that by this assignment the payment of the money due to the bank on the two notes of $2,500 and $2,000 should be secured, and also all moneys that Mulholland then owed Devlin, and such moneys as Devlin should advance to Mulholland, subsequent to this assignment.

The assignment from Mulholland to the Bull's Head Bank was filed with the commissioner of the department of public works, and approved by him on the 23d of January, 1877, and filed with the comptroller of the city on the same day. The assignment of the Bull's Head Bank to Devlin was filed with the commissioner, and approved by him and filed with the comptroller on the 28th of December, 1877. The assignment from Devlin to the Bowery National Bank was filed with and approved by the commissioner and filed with the comptroller on the 19th of June, 1878. And it appears that, as the result of all these various transactions, there was due to the Bowery National Bank the sum of $7,127.47.

The learned justice before whom the case was tried, found the facts stated and as conclusions of law as follows :

"*First.* That the defendant, the Bowery National Bank of New York, is entitled to recover in this action of the aforesaid balance of $7,429.71, in the hands of the mayor, aldermen and commonalty of the city of New York, and of any balance of the said $468.20 that will not be required for repairs to the carriage-way, the aforesaid sum of $7,127.47 and interest from July 18, 1879, with costs of action. Such moneys and costs to be first paid out of the money in the hands of the city."

"*Second.* I further find that the plaintiffs acquired no lien upon

or right to any of said moneys under the agreement between them and Mulholland, upon which their claim, by way of equitable assignment, was based."

" This agreement did not operate as an equitable assignment of any part of the moneys in the hands of the city."

" The plaintiffs are entitled to recover the balance of said moneys that may remain after the aforesaid payments to the Bowery National Bank, under their lien notice filed with the comptroller October 24, 1878, Mulholland having made default and thereby admitted the plaintiffs' claim, thus rendering it unnecessary, as regards Mulholland, to determine the effect of such notice as a matter of law, as against the Bowery National Bank, which claimed under assignments executed and delivered before the filing of the lien, the plaintiffs acquired no lien under the statute. The plaintiffs' lien under the statute could only attach to the extent of Mulholland's interest in the money at the time the notice was filed, besides the rights of the bank and Devlin had accrued before the passage of the act of May 22, 1878, and their claims would be excepted by the terms of the act."

The plaintiffs' claim under the provisions of the contract specially set forth, and also assert their title to the money under and by virtue of an equitable assignment, which they contend was created by the transactions between Mulholland and themselves at the time that they agreed to furnish the materials, and to which particular reference has heretofore been made. It will have been perceived that under the agreement between Mulholland and the city of New York, provision was made for the protection of all persons who had done work or furnished materials under the agreement, and that it was also provided that if the contractor failed to furnish evidence that persons having such claims were paid or secured the amount necessary to meet their demands, should be retained from ' any moneys due the contractor until the liability should be either discharged or such notice withdrawn. It appears in this action that notice of the existence of the plaintiffs' claim was given within ten days after the work was completed and prior to the payment of the balance which was due to Mulholland, and which had not been paid at the commencement of this suit, and which was amply sufficient to cover the plaintiffs' demand.

It is not necessary for the plaintiffs to resort to the effect of an equitable assignment in order to recover in this action, inasmuch as it has been held in this court, in a case almost precisely similar to the one in hand (*Mechanics and Traders' National Bank* v. *The Mayor*, 58 How. Pr., 207; affirmed, 27 Hun, 467), that in a contract having the same provisions as those which were inserted in that between Mulholland and the city, the assignee of moneys due and to grow due under the contract, took them subject to all equities existing between the contractor and the parties doing work or furnishing materials under it, or for which, under the terms of the contract, lienors might enforce their claims against him. The claims of the plaintiffs were for materials furnished, and they were expressly within the terms of the agreement.

The learned justice at the Special Term said in the opinion in the case, *supra*, that it was the intention of the contractor and the corporation of the city that those who had done work and furnished materials in and about the performance of the contract should be protected. In the opinion which was rendered by the General Term it was said the plaintiff, as the assignee of the contractor, must be held to occupy no more favorable position in this controversy than the contractor would if he were the plaintiff; that the work was satisfactorily performed by the contractor and was completed and accepted by the proper officer of the city; and that the respondents had furnished the materials to the contractor, which were used in the contract, and given the city due notice of their claim, and that they required payment out of the money due the contractor for his contract with the city. And the court further said : " We discover nothing which renders the contract inoperative or void, either on account of the nature of the contract or the relation of any party to it." These decisions settle the law in this case.

It may be said, in addition to these views, although not necessary to sustain the plaintiffs' right of action, that the provisions of the contract, in reference to and in reliance upon which the plaintiff dealt with Mulholland, operated as an equitable assignment of the balance due for work and materials when the contract was performed, to the workmen or materialmen who did work in the construction of the sewer, or furnishes materials that were employed for that purpose and who were not paid. (*The People ex rel. Dannat*

v. *Comptroller*, 77 N. Y., 45 ; *Munger* v. *Shannon*, 61 id., 251; *Gallagher* v. *Nichols*, 60 id., [438). Such balance was by these provisions appropriated for that purpose, and was to be retained until these claims were paid or notice of them was withdrawn, provisions which were designed equally for the protection of the city and the workmen and materialmen. There is no doubt about the fact that the city retained sufficient money to meet the plaintiffs' claim, and Mulholland did not dispute its right to do so. This was admitted by the answer interposed on the part of the city and found by the court upon the trial of the action.

The learned justice presiding on the trial of this case in the court below does not seem to have passed upon the question arising under the provisions of the contract and by which the materialmen were designed to be protected, his judgment resting, as we have seen, upon the proposition that the plaintiffs acquired no title to the money by virtue of the equitable assignment which they set up. The case of the *Mechanics and Traders' Bank* v. *The Mayor* (*supra*) is not only an authority for the proposition that the materialmen are entitled to protection over and above the assignees of the contractor, but that there is nothing in the provisions of the contract to which reference has been made which makes it assailable, either as against the law or against public policy.

For these reasons the judgment should be reversed and a new trial ordered.

DANIELS, J., concurred

Present — BRADY and DANIELS, JJ.